Filed 7/16/14  Blythe v. County of Riverside CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| STEPHANIE BLYTHE et al., | |
| Plaintiffs and Respondents, | E055186 |
| v. | (Super.Ct.No. RIC395109) |
| COUNTY OF RIVERSIDE, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Mac R. Fisher, Judge.

Affirmed with directions.

Kinkle, Rodiger & Spriggs; Disenhouse & Ivicevic, Bruce E. Disenhouse; Arias &

Lockwood and Christopher D. Lockwood for Defendant and Appellant.

Haight Brown & Bonesteel, Rita Gunasekaran, and Jules S. Zeman for Plaintiffs

and Respondents.

I

INTRODUCTION

Defendant County of Riverside (the County) appeals judgment awarding plaintiffs

Stephanie Blythe and Michelle Swanson[1] (plaintiffs) attorney fees in their employment discrimination action brought under California's Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.)[2] against the County. The County contends the trial court should have denied plaintiffs' motion for attorney fees because it was untimely and plaintiffs failed to establish good cause for the over two-year delay in filing the motion. The County also argues the trial court miscalculated the amount of attorney fees awarded and the fees were excessive. In addition, the County argues that plaintiffs had no standing to seek attorney fees on behalf of their previous attorney, Andrew Roth (Andrew). The County further asserts that the trial court erred in awarding attorney fees for Andrew's legal services because he abandoned his clients and awarding fees to plaintiffs would constitute an unjustified windfall. The County also contends plaintiffs' contingency fee agreement violates California State Bar rules and public policy against fee splitting, and encourages counsel to grossly pad fee applications and the trial court to award excessive fees. We reject the County's contentions and affirm the judgment.

II

FACTS AND PROCEDURAL BACKGROUND

Blythe worked for the County for over 20 years and Swanson was employed with the County for seven years. Up until the County installed a new manager in plaintiffs' department in July 2000, plaintiffs had never been disciplined or received any warnings.

---

[1] The record on appeal indicates that during this litigation Michelle Swanson's name changed to Michelle Rivera.

[2] All statutory references are to the Government Code unless otherwise stated.

Shortly after the new manager arrived, plaintiffs were stripped of their supervisory authority and filed grievances with the Human Resources Department for being subjected to a hostile workplace. Plaintiffs' grievances were not resolved. In February 2001, plaintiffs filed complaints with the California Department of Fair Employment and Housing.

On March 15, 2001, within a day after the County's director of human resources received notice of plaintiffs' FEHA claims, the County's director of human resources decided to terminate plaintiffs' employment, along with five other female County hospital supervisors. On April 10, 2001, the seven County employees were served with termination notices alleging insubordination, dishonesty and discourteous treatment of employees. In May 2001, the County terminated plaintiffs' employment.[3] Plaintiffs appealed their termination through their union representative and participated in posttermination arbitration.

In 2001, plaintiffs retained Diane Roth (Diane), and later retained Andrew in August 2007, to represent plaintiffs in litigating their employment claims against the County. The retainer agreements between plaintiffs and the Roths and Reid & Hellyer were contingency agreements, which provided for dividing all recovery, including all awarded attorney fees, as follows: "A. Preceding 45 days of Trial: 35 percent to attorneys; 65 percent to Rivera/Blythe. [¶] B. Within 45 days of Trial or as a result of Trial: 45 percent to attorneys; 55 percent to Rivera/Blythe." Since the case went to trial,

---

[3] Patricia Hinojos was also named as a plaintiff in this case but is not a party to this appeal.

the gross proceeds were to be divided, with 45 percent paid to plaintiffs' attorneys as attorney fees and the remaining 55 percent paid to plaintiffs.

Diane represented plaintiffs during administrative proceedings, including an arbitration, during a writ proceeding under Code of Civil Procedure section 1094.5, reversing the arbitrator's decision, and the County's unsuccessful appeal from the trial court decision granting plaintiff's writ petition. Diane also represented plaintiffs in federal proceedings.

In January 2002, plaintiffs filed an employment related complaint in federal court, alleging (1) violation of their right to due process under Title 42 United States Code section 1983, (2) violation of their First Amendment rights under Title 42 United States Code section 1983, and (3) employment discrimination in violation of section 12940 et seq. In April 2002, plaintiffs filed in federal court a motion for a mandatory injunction asking the federal court to order the County to reinstate plaintiffs' employment or, alternatively pay them back pay and benefits, continuing until their arbitration claims were decided. Plaintiffs asserted that the pending arbitration hearing was unduly delayed, and sought immediate reinstatement until the arbitrations were concluded.

In May 2002, the federal court denied plaintiffs' motion for a mandatory injunction on the grounds plaintiffs had not shown a probability of prevailing or suffering irreparable injury if the court did not grant injunctive relief. In June 2003, plaintiffs abandoned their federal lawsuit and filed the instant civil damages lawsuit for retaliatory and discriminatory termination under section 12965.

Meanwhile, arbitration hearings were conducted in April and May 2002 and February, March, April, and October 2003, with the arbitrator finding that plaintiffs were terminated for cause. Plaintiffs filed a petition for writ of mandate in the superior court challenging the arbitrator's decision. The trial court granted plaintiffs' writ petition. In March 2006, this court affirmed the trial court's ruling, holding that there was substantial evidence supporting the trial court's determination there was insufficient evidence to support the arbitrator's findings and decision. The County was ordered to set aside termination of plaintiffs. In 2007, the County complied with the courts' orders to reinstate plaintiffs' employment and reimburse them for lost back pay and benefits.

In 2007, the Roths moved to the law firm of Reid & Hellyer and plaintiffs filed a substitution of attorney form substituting in as plaintiffs' attorneys, the law firm of Reid & Hellyer, in place of Roth & Roth as plaintiffs' attorneys. In August 2007, Andrew took over handling plaintiffs' case for purposes of preparing the case for trial and representing plaintiffs at trial. Diane, who had handled most of the preliminary issues in the case, was no longer involved in the case after Andrew took over the case as plaintiffs' trial attorney. Diane left Reid & Hellyer to become assistant City Attorney for the City of San Bernardino.

The case was tried twice. In June 2008, after several weeks of trial, the first jury trial ended in a mistrial on the County's motion, over plaintiffs' objection. The mistrial ruling was based on a claim the County had relied on a hearsay report by Carmen Nerys, the County's human resources investigator. The trial court ruled the report was not sufficiently reliable or objective and, therefore, was inadmissible. The trial court found

5

the allegations in the Nerys report to be untrue based on a review of the transcript of the administrative hearings in 2002, 2003, and 2004. As a result, the County maintained it needed to produce witnesses to testify as to plaintiffs' alleged misconduct but such witnesses were unavailable during the remaining period of time the jurors had been told they would be required to sit on the jury. Because the County was unable to present its defense, the County requested a mistrial, which the trial court granted.

The case was retried, beginning in September 2008, and continuing through October and the first week of November 2008. On November 7, 2008, the jury returned a verdict in favor plaintiffs on their retaliatory termination claims and rejected plaintiffs' sex discrimination claims. The jury awarded Swanson $65,760.54 in damages and Blythe $100,680.73 in damages.

By letter dated November 18, 2008, Andrew advised the County's attorney, Bruce Disenhouse, that plaintiffs would be seeking an award of attorney fees in excess of $531,500 under section 12965, subdivision (b). Andrew made a settlement demand, which included payment of plaintiffs' judgment award, back pay, costs, and attorney fees. In response to the County's rejection of plaintiffs' settlement demand, Andrew sent Disenhouse a second letter on November 25, 2008, requesting a reasonable counter-demand. The County did not respond.

**Post-Verdict Proceedings**

Judgment was entered on February 26, 2009. In March 2009, Andrew filed a memorandum of costs, totaling $14,183.26. A request for attorney fees was not included as costs. The County filed a motion to tax costs, which the trial court granted, with costs

reduced by $2,886.73. At the County's request, on May 22, 2009, the trial court vacated the judgment and entered a corrected new judgment. On June 18, 2009, plaintiffs filed a notice of entry of amended judgment. In August and September 2010, the County issued checks to Reid & Hellyer and plaintiffs, in payment of the judgment, plus interest. Plaintiffs' paid their attorneys 45 percent ($74,898.57) of the judgment proceeds received from the County. According to Andrew, prior to expiration of the 60-day period to file plaintiffs' motion for attorney fees, he drafted most of the required supporting documents but never filed the motion.

Beginning in February and March 2009, plaintiffs each began attempting to contact Andrew, to discuss the issue of filing a motion for recovery of plaintiffs' attorney fees. Swanson called Andrew 33 times and left him messages through mid-October 2010. Blythe also emailed and called Andrew and left him 24 messages regarding recovery of plaintiffs' attorney fees. In addition, she sent Andrew a letter complaining that he had not responded to her calls and emails and requesting him to advise her of the status of her case and whether he had filed her claim for attorney fees. Blythe also sent a letter to the managing partner of Reid & Hellyer, complaining that Andrew had not responded to any of her calls or emails. The letter reveals that Blythe also contacted Diane, who told her in January 2010 that Diane was unable to provide any information on the civil case. Both letters were sent by certified mail. Finally, Andrew responded on October 19, 2010, informing plaintiffs that he would not be representing plaintiffs on the attorney fees issue and suggested plaintiffs retain another attorney to litigate the matter.

7

On November 2, 2010, plaintiffs contacted the law firm of Heiting & Irwin regarding their attorney fees claim. Dennis Stout was assigned the handling of plaintiffs' attorney fees motion and began investigating the matter. He attempted to obtain documents and interview plaintiffs and Andrew. There were voluminous documents because the case had been pending for over 10 years and tried twice. Although Stout was assigned the case in November 2010, plaintiffs did not formally retain Heiting & Irwin until May 20, 2011. Plaintiffs' motion for attorney fees was completed and filed on September 2, 2011. The day before, plaintiffs filed a substitution of attorney form, substituting in Heiting & Irwin as their attorneys. The County filed opposition to the motion for attorney fees.

During a hearing on the motion on October 12, 2011, the trial court continued the hearing to allow plaintiffs to file a declaration by Andrew under seal. The court also permitted the parties to file supplemental briefing. After the parties filed supplemental briefing, the trial court heard plaintiffs' motion for attorney fees on October 31, 2011, took the matter under submission, and granted the motion on November 18, 2011. On November 29, 2011, the trial court entered an order awarding plaintiffs $542,142.50 for the Roths' legal services and an additional $10,642.50 in attorney fees for legal services provided by Heiting & Irwin in preparing the motion for attorney fees.

III

TIMELINESS OF MOTION FOR ATTORNEY FEES

The County contends plaintiffs' motion for attorney fees should have been denied as untimely because plaintiffs lacked good cause for the delay in filing their motion.

8

*A. Applicable Law*

A party seeking attorney fees authorized *by statute* may do so "upon a noticed motion" or "upon application supported by affidavit made concurrently with a claim for other costs." (Code Civ. Proc., § 1033.5, subd. (c)(5).) Although plaintiffs timely filed a memorandum of costs, they did not include a request for attorney fees. Instead, over two years after entry of judgment, plaintiffs filed a separate motion for attorney fees under section 12965, subdivision (b), which provides: "In civil actions brought under this section, the court, in its discretion, may award to the prevailing party, including the department, reasonable attorney's fees and costs, including expert witness fees." Plaintiffs were prevailing parties on their employment retaliation claims brought under FEHA.

Under California Rules of Court, rule 3.1702(b), normally a claim for attorney fees "must be served and filed within the time for filing a notice of appeal . . . ." (Cal. Rules of Court, rule 3.1702(b)(1)[4]; see also *Carpenter v. Jack in the Box Corp.* (2007) 151 Cal.App.4th 454, 468.) The County argues plaintiffs are precluded from recovering attorney fees because plaintiffs did not file or serve the motion within the time limits imposed by rule 3.1702(b).

Rule 3.1072(b), however, states: "For good cause, the trial judge may extend the time for filing a motion for attorney's fees in the absence of a stipulation . . . ." Under this provision, a trial court has discretion to accept an untimely motion for attorney fees

---

[4] Unless otherwise noted, reference to a "rule" will be to the California Rules of Court.

9

upon a showing of good cause. (*Lewow v. Surfside III Condominium Owners Association* (2012) 203 Cal.App.4th 128, 134 (*Lewow*).) "Rule 3.1702(d) is 'remedial' and is to be given a liberal, rather than strict interpretation. (E.g., *Barragan v. County of Los Angeles* (2010) 184 Cal.App.4th 1373, 1382, [relief to be granted unless absolutely forbidden].)" (*Lewow,* at p. 135.)

We review the trial court's decision to extend the time for filing the attorney fees motion under the abuse of discretion standard. (*Lucci v. United Credit & Collection Co.* (1934) 220 Cal. 492, 495 [trial court's decision pursuant to statute permitting "an extension . . . 'upon good cause shown'" reviewed for "abuse of discretion"]; see also *Laraway v. Sutro & Co.* (2002) 96 Cal.App.4th 266, 273.)

B. *Good Cause*

Recognizing their motion was not filed within the 60-day limitation period under rule 3.1702(b), plaintiffs argue the trial court did not abuse its discretion in allowing their motion because there was good cause for plaintiffs' delay in filing it. We agree.

The trial court stated in its order granting plaintiffs' motion for attorney fees the following: "In order to grant the motion, the Court finds that the original attorneys abandoned the plaintiffs post judgment and CCP 473 relief was sought and now relief is granted. [¶] The conduct of Mr. [Andrew] Roth is considered by this bench officer as 'positive misconduct.' That conduct cannot be imputed to the client. Daley v. County of Buffe (1964) 227 CA 2d 380, 391. [¶] Further, the defendant argues that the law firm of Heiting & Irwin did not timely seek a ruling on the attorney fee motion. The Court disagrees, noting that the attorney-client relationship was entered into with present

10

attorneys and plaintiffs in May 2011.  The information needed to present this motion fully was not available and a delay in presenting the motion by the new firm was reasonable under these circumstances."

The County argues, not only was there no good cause for plaintiffs delaying filing their motion for over two years but, in addition, even if there was good cause for the delay because of Andrew's depression, there was no good cause for plaintiffs' delay in retaining a new attorney and for their new attorney's delay in preparing and filing the motion.  The County asserts there was inexcusable and unexplained delay during the following three time periods:  (1) from the date of entry of the verdict on November 7, 2008, until Andrew told plaintiffs on October 19, 2010, to retain new counsel to bring their motion for attorney fees; (2) from October 19, 2010, until May 20, 2011, when plaintiffs retained Heiting & Irwin as their attorneys; and (3) from May 20, 2011, until plaintiffs filed their motion on September 2, 2011.

### (1) November 7, 2008, to October 19, 2010

The County argues Andrew's failure to file plaintiffs' motion for attorney fees was inexcusable and therefore there was no good cause for the delay during his representation of plaintiffs from November 7, 2008, until October 19, 2010.  The trial court found that Andrew had abandoned plaintiffs and therefore his conduct constituted "positive misconduct," which could not be imputed to plaintiffs.  We conclude this finding was well supported by substantial evidence and plaintiffs were not precluded from recovering reasonable attorney fees for Andrew's legal services.

11

Generally, the negligence of an attorney is imputed to the client. (*Seacall Development, Ltd. v. Santa Monica Rent Control Bd.* (1999) 73 Cal.App.4th 201, 204-205 (*Seacall*).) However, "California courts recognize an exception to this rule in those cases '"where the attorney's neglect is of that extreme degree amounting to positive misconduct, and the person seeking relief is relatively free from negligence."' [Citation.] This exception is premised on the concept such extreme misconduct '"obliterates the existence of the attorney-client relationship"' [citation] and for this reason the client has no attorney from whom negligence can be imputed. . . . Imputation of the attorney's neglect to the client ceases at the point where 'abandonment of the client appears.' [Citation.]" (*Id.* at p. 205; see also *Carroll v. Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892, 898-901.)

Determination of whether an attorney has abandoned a client is a factual matter. (*Seacall, supra,* 73 Cal.App.4th at p. 205.) "Even where abandonment is shown, however, the courts also consider equitable factors in deciding whether the dismissal of an action should be set aside. These factors include the client's own conduct in pursuing and following up the case [citation], [and] whether the defendant would be prejudiced by allowing the case to proceed [citation]." (*Ibid.*) In determining whether a client has been abandoned and is entitled to relief, the trial courts "must also balance the public policy favoring a trial on the merits against the public policies favoring finality of judgments and disfavoring unreasonable delays in litigation [citation] and the policy an innocent client should not have to suffer from its attorney's gross negligence against the policy a

grossly incompetent attorney should not be relieved from the consequences of his or her incompetence. [Citation.]" (*Ibid.*)

Here, there is substantial evidence supporting the trial court's finding that Andrew abandoned plaintiffs during the 60-day period, as well as thereafter, during which he should have filed plaintiffs' motion for attorney fees. Andrew acknowledges in his declaration filed in support of plaintiffs' motion for attorney fees that he failed to file a timely motion for attorney fees. Andrew states in his declaration: "Following completion of this litigation, I was contacted on multiple occasions by Michelle Swanson and Stephanie Blythe, to pursue the issue of attorneys' fees. The original fee agreement in this matter provided that all recoveries, including attorneys' fees, were part of the contingent fee agreement, to be shared by Plaintiffs in a given percentage. I did not pursue the attorneys' fees in this matter, when requested by my clients, in that I became depressed and unable to complete this case. I have no legal excuse for not preparing and litigating the issue of attorneys' fees, as I advised my clients that I would pursue the attorney fees. I consistently advised my clients I would pursue the attorneys fees but did not." Andrew also provided another declaration under seal, which states in greater detail the seriousness of his physical and mental condition during the time he should have filed plaintiffs' motion.

Up until October 2010, plaintiffs were unaware of Andrew's misconduct. Their reliance on him up until he told them to retain another attorney was therefore understandable and justifiable. (*Seacall, supra,* 73 Cal.App.4th at p. 206.) In addition to establishing attorney abandonment, plaintiffs established that they each were extremely

13

diligent in pursuing and following up on their case but were unsuccessful in obtaining any truthful information from Andrew concerning the status of their attorney fee claim until October 19, 2010. Plaintiffs both persistently attempted to contact Andrew to ensure that Andrew had timely filed a motion for attorney fees. Swanson called Andrew and left him 33 messages, beginning in February 2009, shortly after the verdict was entered, up until Andrew finally told her on October 19, 2010, to find another attorney. Blythe also repeatedly emailed and called Andrew during this same time period. She left him 24 messages, inquiring regarding filing plaintiffs' attorney fees motion. Blythe also sent letters by certified mail to Andrew and to the managing partner of Reid & Hellyer. Although Andrew worked at a law firm, there is no evidence that anyone knew or had reason to know that he was not properly handling plaintiffs' case. Andrew had successfully tried the case, a memorandum of costs had been filed, and Diane was no longer involved in the case or employed at the firm.

Under these circumstances, the trial court reasonably found there was good cause for plaintiffs' delay in filing their motion for attorney fees during the period of November 7, 2008, until October 19, 2010. Andrew committed "positive misconduct," which could not be imputed to plaintiffs. He led plaintiffs to believe he would file their motion for attorney fees but, instead, unbeknownst to plaintiffs, abandoned them as clients because he was suffering from debilitating depression.

**(2) October 19, 2010, until May 20, 2011**

Although there was a seven-month delay between when Andrew suggested plaintiffs retain another attorney on October 19, 2010, and plaintiffs' retention of Heiting

14

& Irwin on May 20, 2011, there is evidence that plaintiffs relatively quickly searched for a new attorney. On November 2, 2010, within two weeks after Andrew told plaintiffs they should retain another attorney, plaintiffs contacted Heiting & Irwin. The law firm assigned the case to attorney Dennis Stout to review and research the possibility of filing plaintiffs' motion for attorney fees.

According to Stout's declaration, even though plaintiffs did not formally retain Heiting & Irwin until May 20, 2011, Stout met with plaintiffs on November 2, 2010, and was assigned the handling of this attorney fee motion, on November 2, 2010. Stout explained to the court at the hearing on the motion for attorney fees that between November and May, "I was given an assignment, no question about it. I looked into this case. I did what I could do to figure out whether there was a theory, a possibility of recovery to the plaintiffs based upon the conduct of their attorney. [¶] . . . [¶] I told [plaintiffs] I was working on it. But for whatever reason, we weren't able to get a retainer agreement until a later point in time. And that's a whole 'nother issue that I probably really cannot go into. . . . [¶] . . . [¶] [W]hen we were retained, I completed it, I met with people, I did what I could do to present this issue to the Court."

Although it is unclear as to how much time Stout spent on the case before May 20, 2011, or the reason for the delay in plaintiffs formally retaining the Heiting & Irwin firm, we cannot say the trial court abused its discretion in concluding the delay was reasonable, since plaintiffs contacted Heiting & Irwin on November 2, 2010, at which time Stout was assigned the case and conducted preliminary investigation on the matter to determine the viability of the attorney fees motion.

15

### (3) May 20, 2011, to September 2, 2011

The County argues that plaintiffs' new attorneys' delay of over three months to prepare and file plaintiffs' motion for attorney fees was excessive and unreasonable. We disagree. The delay was reasonable. Stout explained in his supporting declarations that investigating and preparing the motion was a difficult task because of the voluminous documents in the contentious case, which was litigated for over 10 years and included two trials, arbitration, appeals, and writ proceedings.

After the firm of Heiting & Irwin was retained on May 20, 2011, Stout spent 38.7 hours preparing the motion, which included researching and meeting with plaintiffs and the Roths, and preparing supporting declarations by (1) Andrew, (2) Stout, (3) Swanson, and (4) attorney Vincent Nolan, who provided expert opinion on the reasonableness of the attorney fees requested. Stout also filed a request for judicial notice, which included various supporting documents. Stout explained in his reply declaration, responding to the County's opposition, that, "Any delay by my office, was due to my inability to obtain the multiple documents or obtain the level of cooperation necessary from the prior handling attorney, Andrew Roth, in an effort to complete this motion." Stout further noted that Andrew was currently in New York, which made it more difficult for him to assist with plaintiffs' motion.

The three-month period plaintiffs' attorneys spent gathering the required supporting documents and preparing plaintiffs' motion for attorney fees, supporting declarations, and request for judicial notice, was not excessive or unreasonable. The trial

court could reasonably conclude there was good cause for the three-month delay in preparing plaintiffs' motion for attorney fees.

Furthermore, the County has not established it was prejudiced by the two-year delay in filing plaintiffs' motion for attorney fees. Attorney fees customarily are awarded the prevailing party in an employment retaliation claim brought under section 12965, unless special circumstances would render an award of fees unjust (*Young v. Exxon Mobil Corp.* (2008) 168 Cal.App.4th 1467, 1474). There was nothing to suggest in this case there were special circumstances that would render a fee award unjust. In addition, within two weeks after the jury returned a verdict in favor of plaintiff, Andrew advised the County that plaintiffs intended to seek recovery of their attorney fees in excess of $531,500. Andrew sent the County two letters in November 2009, attempting to settle plaintiffs' attorney fees claim. The County did not respond to Andrew's second letter requesting a counter offer. The County was therefore on notice that plaintiffs intended to recover attorney fees.

The County argues it was prejudiced because the lengthy delay in filing the motion resulted in the judge who tried the case, Judge Burby, no longer being available to decide the motion for attorney fees. But it must be presumed that, even though there was a different judge, the judge deciding the motion properly conducted a hearing on the matter, reviewed the parties' supporting and opposing papers and documentation, listened to argument, and fairly decided the matter. There is no indication this did not occur or that the result would have been any different had Judge Burby decided the motion. Even though Judge Burby may have been familiar with Andrew's conduct during the two trials,

17

the issue of Andrew's abandonment did not concern Andrew's conduct during the trials. It concerned his conduct after entry of judgment in June 2009, during which Andrew made no court appearances in the case. Judge Burby therefore would not have any greater insight into Andrew's conduct or condition during the period of abandonment than the judge who decided the motion for attorney fees.

In addition, despite the passage of over two years after the County received notice plaintiffs would be seeking attorney fees, there was no reason for the County to assume plaintiffs no longer intended to recover their attorney fees from the County. The County apparently made no attempt to inquire as to whether plaintiffs intended to pursue their attorney fees claim after expiration of the standard 60-day period to file a motion for attorney fees, and it was not reasonable to assume plaintiffs had dropped their claim or could not prevail on it, since plaintiffs had initially made a settlement demand of over $500,000 in fees and the trial court still had discretion to award attorney fees after the 60-day period ran, upon a showing of good cause for the delay.

The County cites *Transit Ads, Inc. v. Tanner Motor Livery, LTD* (1969) 270 Cal.App.2d 275 and *Luri v. Greenwald* (2003) 107 Cal.App.4th 1119 (*Luri*) for the proposition plaintiffs have not established that Andrew's condition constituted a valid medical excuse for his inaction. The County's reliance on these cases is misplaced. *Transit Ads* is distinguishable in that it concerns setting aside a default judgment based on the plaintiff's attorney's excusable neglect, which was attributable to being physically disabled from adverse effects caused by a weight loss medication. (*Transit Ads,* at p. 286.) The instant case does not concern setting aside default judgment based on attorney

18

excusable neglect, caused by physical disability from a weight loss medication. This case concerns whether there was good cause for delay in filing a motion for attorney fees based on attorney abandonment, arising from Andrew suffering from severe depression.

*Luri, supra,* 107 Cal.App.4th 1119, is also not on point. In *Luri*, the plaintiff's attorney failed to file timely opposition to a summary judgment motion and the trial court denied relief under Code of Civil Procedure section 473. The plaintiff's request to file late opposition was based on the plaintiff's attorney suffering from medication induced fatigue. The *Luri* court denied relief because the attorney did not provide sufficient details as to the attorney's medical condition and its effect on his performance. In addition, the trial court concluded the attorney was not so physically incapacitated that he could not file timely opposition, since he was able to go to the courthouse, prepare papers, and argue motions. (*Luri,* at p. 1129.) Here, there is evidence that, after judgment was entered in this case, Andrew was suffering from debilitating depression and had stopped doing anything on plaintiffs' case and other cases as well. Unlike in *Luri*, here there is sufficiently detailed evidence that plaintiffs' attorney abandoned plaintiffs and other clients because of debilitating depression.

Under the totality of the circumstances, the trial court did not abuse its discretion in finding there was good cause for plaintiffs' delay in bringing their motion for attorney fees and therefore their motion was timely filed.

IV

MISCALCULATION OF ATTORNEY FEES

The County asserts the trial court miscalculated plaintiffs' attorney fees by counting twice Stout's attorney fees of $10,642.50.

Plaintiffs' motion for attorney fees requested the following lodestar sum for attorney fees:

The Roths            $531,500.00

Stout                $  10,642.50

Total                $542,142.50

In Andrew's supporting declaration, Andrew requested attorney fees in the amount of $531,000 for the Roths' legal services provided through entry of judgment. Stout stated in his supporting declaration that his current billable rate was $275 per hour and he spent 38.7 hours preparing plaintiffs' motion, which amounts to $10,642.50 in attorney fees. Plaintiffs also requested a 2.0 multiplier of the lodestar amount of attorney fees.

After hearing the plaintiffs' motion for attorney fees on October 31, 2011, the trial court took the matter under submission and on November 18, 2011, entered an order granting plaintiffs' motion. The order states: "Attorney fees are to be paid in the amount of $542,142.50 for all attorney work performed by attorneys Andrew and Diane Roth, and an additional $10,642.50 for the law firm of Heiting & Irwin for work performed in the preparing and filing of the instant motion." The court further stated it declined to grant plaintiffs' request to apply a multiplier because "through use of the 'lodestar' formula, the Court recognizes that the rate of $300 and $400 per hour is higher than the

20

prevalent rate in this community and the Court exercises its discretion by not multiplying or increasing the rate of recovery for attorney fees."

It is apparent from the trial court's order awarding attorney fees that the trial court inadvertently miscalculated the amount of attorney fees awarded by including Stout's attorney fees of $10,642.50 in the total fees awarded for the Roths' legal services and then, again awarding $10,642.50 for Stout's legal services.

Plaintiffs merely respond that the County never raised the error in the trial court and therefore plaintiffs waived any error in the order. We disagree. Plaintiffs did not waive or forfeit their objection to the error because the trial court took the matter under submission after hearing argument on the motion, without informing the parties of the court's intended ruling. (*Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 263-264; *Robinson v. Grossman* (1997) 57 Cal.App.4th 634, 648.) Plaintiffs therefore did not have a meaningful opportunity to object at the hearing to the error in the attorney fees award. Since the trial court clearly inadvertently miscalculated the attorney fees by twice awarding $10,642.50 for Stout's legal services, that amount is ordered deducted from the attorney fees awarded for the Roths' legal services.

Accordingly, the attorney fees award is ordered modified as follows:

The Roths          $531,500.00

Stout              $ 10,642.50

Total              $542,142.50

21

The County contends plaintiffs do not have standing to seek attorney fees on behalf of Andrew. The County reasons that the contingency fee agreement between plaintiffs and the Roths provides that 45 percent of plaintiffs' recovery in the case, including the judgment proceeds and awarded attorney fees, is to be paid to the Roths as legal fees and plaintiffs are entitled to the remaining 55 percent of the gross recovery. The County therefore concludes plaintiffs only have standing to recover their share of the attorney fees recovered, which would amount to 55 percent of the total attorney fees award. The County concedes that, if this court concludes there was substantial evidence supporting plaintiffs' contention they paid the Roths 45 percent of the judgment proceeds under the contingency fee agreement, then plaintiffs have standing also to request and recover that amount as attorney fees ($74,898.57).

According to plaintiffs, the attorney fees award should be reduced by $243,964.12, which is 45 percent of $542,142.50, the total amount of attorney fees awarded for the Roths' legal services. The County notes that, if this court corrects the attorney fees order to reflect an award of $531,500 for the Roths' legal services, as requested above, then the attorney fees award should be reduced by $239,175, which is the amount of fees the Roths are entitled to under the contingency fee agreement.

It is well established that, normally, "Where the court is authorized by statute to allow attorneys' fees in certain actions or proceedings, such allowance must be made to the party to the action for fees paid or incurred by him, and not directly to the attorney,

22

who is not a party to the action.  [Citations.]"  (*City of Los Angeles v. Knapp* (1936) 7 Cal.2d 168, 173.)  California courts, however, have held that statutory fee awards should be paid directly to the prevailing party's attorney in a FEHA case, rather than to the party, unless special factors would render a fee award unjust.  (*Flannery v. Prentice* (2001) 26 Cal.4th 572, 583 (*Flannery*); *Young v. Exxon Mobil Corp.* (2008) 168 Cal.App.4th 1467, 1474; § 12965, subd. (b).)  This is to encourage attorneys to undertake FEHA cases.  (*Flannery,* at p. 583.)

In *Flannery, supra,* 26 Cal.4th at page 590, the court held that an award of FEHA attorney fees, which exceeds fees the client has already paid, belongs to the attorneys, *unless* there is a valid contractual agreement otherwise disposing of them (see also *Lindelli v. Town of San Anselmo* (2006) 139 Cal.App.4th 1499, 1512, 1516.)  The court in *Flannery* stated that "attorney fees awarded pursuant to section 12965 (exceeding fees already paid) belong, absent an enforceable agreement to the contrary, to the attorneys who labored to earn them."  (*Flannery,* at p. 590.)  The fees do not necessarily belong to the attorneys "*where the parties have made an enforceable agreement disposing of an award's proceeds.*"  (*Ibid.*; italics added.)  The court in *Flannery* noted that "There is no indication and neither party suggests the Legislature intended FEHA's attorney fee provision to displace or diminish FEHA plaintiffs' freedom to contract with their attorneys."  (*Flannery,* at p. 588, fn. 16.)  In *Flannery*, the court remanded the case for a determination as to whether there was a contractual fee agreement and, if there was, what the terms were.  (*Id.* at p. 590.)

Here, the court was authorized under section 12965, subdivision (b), to award attorney fees to plaintiffs as the prevailing parties. Therefore, under *Knapp* and *Flannery*, plaintiffs had standing to seek reasonable attorney fees under section 12965, subdivision (b). The County argues plaintiffs only had standing to recover their share of the attorney fees permitted under the contingency fee agreement; that is, they did not have standing to recover the Roths' 45 percent share of the fees awarded by the court. We disagree.

As explained above, plaintiffs had standing to recover reasonable fees under section 12965, subdivision (b), regardless of the amount ultimately paid to the Roths under the contingency fee agreement. The parties' contractual arrangement as to how much of the fees awarded by the trial court plaintiffs must pay to their attorneys and the legality of the fee agreement have no bearing on plaintiffs' fundamental right as the prevailing party to seek recovery of reasonable attorney fees from the County under section 12965, subdivision (b). (*Persson v. Smart Inventions, Inc.* (2005) 125 Cal.App.4th 1141, 1173, 1175-1176.)

VI

ADDITIONAL REASONS ASSERTED FOR

DENYING ATTORNEY FEES

The County asserts the trial court should not have awarded plaintiffs attorney fees for the Roths' legal services on the following additional grounds: (1) Andrew abandoned plaintiffs; (2) allowing plaintiffs to retain the proceeds of an attorney fees award, in addition to judgment damages, confers on plaintiffs an unjustified windfall; (3) the

24

contingency fee agreement violates Rules of Professional Conduct rule 1-320,[5] which prohibits splitting fees with nonlawyers; and (4) the contingency fee agreement encourages attorneys to lie and grossly pad fee applications, and encourages the trial court to award grossly excessive fees. We conclude none of these grounds merits reversing the attorney fees award in this case.

## A. Abandonment

The County argues that because Andrew abandoned his clients, the Roths are not entitled to recover any attorney fees earned before the abandonment. In other words, the County maintains that, even though the Roths successfully litigated plaintiffs' contentious employment claim against the County over a period of 10 years, plaintiffs are not entitled to recover reasonable attorney fees for their services. Plaintiffs have already paid the Roths under the contingency fee agreement $74,898.57 in fees from the judgment proceeds, which amounts to 45 percent of the judgment. According to the County, the fact that Andrew abandoned plaintiffs postjudgment, when it came to filing a motion for attorney fees, negates any right to plaintiffs recovering statutory attorney fees. The County argues that Andrew should not be rewarded for abandoning his clients when he would not have received anything at all by missing the deadline for filing a motion for attorney fees.

We disagree. This is not a case of attorney fees being awarded for intentional misconduct. There is no evidence that awarding plaintiffs reasonable attorney fees for

---

[5] Rules of Professional Conduct rule 1-320 is referred to herein as RPC rule 1-320.

Andrew's legal services allows him to take advantage of his own wrong. The Roths are entitled to be compensated for their legal services, which resulted in a successful outcome. (*Moore v. Fellner* (1958) 50 Cal.2d 330, 342.) And plaintiffs are entitled to recover reasonable attorney fees under section 12965, subdivision (b). We cannot say the trial court abused its discretion in awarding plaintiffs' attorney fees where the Roths provided proper legal representation which resulted in plaintiffs prevailing in the case, particularly when plaintiffs already paid the Roths a portion of the attorney fees agreed to under the contingency fee agreement by paying the Roths 45 percent of the judgment proceeds.

Depriving plaintiffs of recovery of attorney fees would not only unjustly enrich the County and unjustly penalize Andrew and Diane for all their hard work representing plaintiffs over 10 years, when there is no evidence they committed any wrongdoing during that time or had any malicious intent to abandon plaintiffs. Denying attorney fees recovery would also penalize plaintiffs by not allowing them to recover reasonable attorney fees which would reimburse plaintiffs for fees they already paid the Roths from the judgment under the contingency fee agreement.

B. *Retention of Both Judgment Proceeds and Attorney Fees Confers a Windfall*

The County contends that the attorney fees award confers an unjustified windfall on plaintiffs because plaintiffs were also awarded damages, which the jury determined fully compensated plaintiffs. Under the contingency fee agreement, plaintiffs were entitled to 55 percent of the attorney fee recovery, as well as 55 percent of the judgment

26

proceeds. The County argues plaintiffs' additional recovery from the attorney fees award is an unjustified windfall.

We disagree. In addition to judgment damages awarded plaintiffs, plaintiffs were also entitled to recover reasonable attorney fees under section 12965, subdivision (b). The County has not established that the amount of fees awarded for attorney services was unreasonable. Furthermore, although under the contingency fee agreement, plaintiffs were entitled to retain 55 percent of the attorney fees award, this was not an unjustified windfall because plaintiffs shared with their attorneys 45 percent of the judgment proceeds as fees. Plaintiffs and their attorneys were legally entitled to agree contractually as to how they wanted to provide for attorney compensation. The County does not have standing to challenge the terms and legality of plaintiffs' contingency fee agreement which allows plaintiffs to recover a portion of the attorney fees award. Therefore there was no unjustified windfall

*C. Violation of RPC Rule 1-320*

The County argues that plaintiffs' contingency fee agreement is an illegal fee splitting agreement which violates public policy and RPC rule 1-320(A). RPC rule 1-320(A) provides in relevant part: "Neither a member nor a law firm shall directly or indirectly share legal fees with a person who is not a lawyer." RPC rule 1-320 lists several exceptions which are inapplicable.

In determining whether the fee-sharing agreement in the instant case was illegal, we initially determine whether the agreement's subject matter violates RPC rule 1-320(A). This is a question of law that we decide de novo. (*McIntosh v. Mills* (2004) 121

27

Cal.App.4th 333, 343 (*McIntosh*).) RPC rule 1-320's "prohibition against lay intermediaries seeks to bar both solicitation and the presence of a party demanding allegiance the lawyer owes his client." (*McIntosh,* at p. 345.) "Attorney ethics panels, both in and out of state, have been moved to embrace rules against fee sharing with nonattorneys out of concern for interference with the attorneys' professional judgment, the creation of conflicts of interest, and the unwholesome spectre of attorneys soliciting professional liaisons with laypersons. [Citations.]" (*Ibid.*) In addition, "[o]ne authority has also suggested that fee sharing tends to increase the total fees charged to clients, presumably in an effort by the attorney to 'make up' that portion being paid to the third party. [Citation.]" (*Ibid.*; see also LACBA Opinion 523 at p. 39.[6])

These are not valid concerns with regard to the contingency fee agreement in the instant case, in which the agreement is between an attorney and client. As thoroughly discussed in Los Angeles County Bar Association Professional Responsibility & Ethics Committee Ethics Opinion No. 523 (December 2009) (LACBA Opinion 523), there is not the same risk that the client's best interests will be compromised. (LACBA Opinion 523 at pp. 39-40.) As long as the fee agreement terms are "fair, reasonable and fully explained to the client" and as long as the attorneys abide by the terms of the agreement, the agreement does not violate RPC rule 1-320. (*Severson & Werson v. Bolinger* (1991) 235 Cal.App.3d 1569, 1572, quoting *Alderman v. Hamilton* (1988) 205 Cal.App.3d 1033, 1037; see also LACBA Opinion 523 at p. 39.) Just as an attorney and client may

---

[6] Los Angeles County Bar Association Professional Responsibility & Ethics Committee Ethics Opinion No. 523, December 2009.

contractually agree to a reduction of the percentage of a contingent fee by the amount of a court-awarded attorney fee (*Denton v. Smith* (1951) 101 Cal.App.2d 841, 844) and a client can negotiate the percentage of the contingent fee, so too can an attorney and client legally agree to the division of a statutory award of attorney fees between the attorney and client without violating public policy or RPC rule 1-320's prohibition against fee splitting with a nonlawyer.

The County cites *McIntosh, supra,* 121 Cal.App.4th 333 for the proposition that plaintiffs' contingency fee agreement is an illegal fee splitting agreement because it provides for splitting attorney fees with plaintiffs who are nonlawyers. In *McIntosh*, the fee-splitting agreement was between a lawyer and a nonlawyer, who worked for the lawyer. The lawyer and nonlawyer agreed the nonlawyer would receive 15 percent of the attorneys fees for assisting the lawyer in suing a bank. After the bank lawsuit settled, the lawyer refused to pay the nonlawyer for his work on the lawsuit, as agreed, and the nonlawyer sued for breach of the fee-splitting agreement. The *McIntosh* court held an agreement between an attorney and a nonlawyer was unenforceable because it was an illegal fee-splitting agreement. (*McIntosh,* at p. 346.) *McIntosh* is distinguishable because the fee sharing agreement in *McIntosh* was not between an attorney and the attorney's client.

The California Supreme Court in *Flannery*, indicates that a contingency fee agreement, in which the parties agree to divide the gross judgment proceeds and attorney fees award between the attorney and client, is permissible and does not violate RPC rule 1-320's prohibition against fee splitting. (*Flannery, supra,* 26 Cal.4th at pp. 586-587, fn.

29

5, 590.) The court in *Flannery* stated that it concluded "that attorney fees awarded pursuant to section 12965 (exceeding fees already paid) belong, absent an enforceable agreement to the contrary, to the attorneys who labored to earn them. The preceding analysis, of course, may not be dispositive—indeed, will not even come into play—where the parties have made an enforceable agreement disposing of an award's proceeds." (*Flannery, supra,* 26 Cal.4th at p. 590.)

As aptly noted in LACBA Opinion 523, pages 38-39, this language in *Flannery* "can be read as suggesting that it is appropriate for the attorney and client to agree, in an otherwise enforceable retainer agreement, to divide the statutory award of attorney's fees that could otherwise belong to the attorney. Indeed, *Flannery* assumed that the parties would contract for a disposition of the statutory attorney's fees. ([*Flannery*,] at 588, fn. 16) Under the facts of this Opinion, attorney and client have agreed to divide percentages of the recovery inclusive of both the client's award and the fee award, and would properly be viewed not as fee splitting but rather as a division of the gross recovery obtained."

Likewise, in the instant case, the contingency fee agreement provides for the division of the gross recovery obtained from the judgment proceeds and attorney fees award. Therefore the agreement is not an illegal fee splitting agreement, it is permissible under RPC rule 1-320, and it does not violate public policy.

D. *Excessive Fee Applications and Awards*

The County argues that the type of contingency fee agreement allowing for the plaintiff to share an award of attorney fees would require counsel to lie and grossly pad

30

fee applications, and the trial court, in turn, would award grossly excessive fees in order to allow for adequate compensation of the plaintiff's attorney. The County reasons that by paying plaintiffs' attorneys only 45 percent of the attorney fees award, plaintiffs' attorneys would be paid far less than reasonable compensation for their work.

We are not persuaded by this argument. First, the contingency fee agreement takes into account that although plaintiffs' attorneys will receive only a portion of the attorney fees award, they will also receive a portion of the judgment proceeds, which commonly is the manner in which attorney fees are paid under a contingency fee arrangement. Plaintiffs' attorneys are entitled to 45 percent of the gross proceeds recovered in the case. This is a reasonable means of compensating plaintiffs' attorneys in a contingency case. There is no evidence the contingency fee agreement resulted in plaintiffs' attorneys padding their attorney fees applications or in the trial court awarding more than reasonable compensation for plaintiffs' attorneys' work.

The County asserts in a single sentence, without citing any evidence or legal authority that the attorney fees award is grossly excessive. The County does, however, in its reply brief provide additional argument challenging the amount of fees awarded. We note that, because the County's arguments challenging the amount of fees are not raised until the reply brief, plaintiffs have been deprived of the opportunity to respond. (*Campos v. Anderson* (1997) 57 Cal.App.4th 784, 794, fn. 3; *Locke v. Warner Bros., Inc.* (1997) 57 Cal.App.4th 354, 368.) Nevertheless we will address on the merits the County's objection to the amount of attorney fees awarded.

31

An attorney fees award "is generally reviewed for abuse of discretion. [Citations.] In particular, '[w]ith respect to the *amount* of fees awarded, there is no question our review must be highly deferential to the views of the trial court.' [Citation]; see *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 [recognizing trial court's broad discretion in determining amount of reasonable attorney fees because experienced trial judge is in the best position to decide value of professional services rendered in court]; [citation].) 'An appellate court will interfere with the trial court's determination of the amount of reasonable attorney fees only where there has been a manifest abuse of discretion.' [Citations.]" (*Concepcion v. Amscan Holdings, Inc.* (2014) 223 Cal.App.4th 1309, 1319-1320.)

The County has not established that the trial court abused its discretion in awarding $531,000 for the Roths' legal services provided over a 10-year period, which included two trials, arbitration, appeals, and writ proceedings. The record contains detailed itemized billing invoices and records substantiating the fees, along with the declaration of attorney Vincent Nolan, who provides expert opinion indicating that plaintiffs' billing rates were reasonable.

VII

DISPOSITION

$10,642.50 is ordered stricken from the amount of attorney fees awarded for the Roths' legal services, as that amount is duplicative since the trial court also awarded that sum separately for Stout's legal services. The total amount of attorney fees awarded for the Roths' legal services is therefore ordered reduced by $10,642.50, to **$531,500**. In all

32

other regards, the judgment is affirmed.  Plaintiffs are awarded their costs and attorney

fees on appeal as the prevailing parties.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

I concur:


McKINSTER

Acting P. J.

KING, J., Concurring.

I concur in the result. I agree with the majority that the attorney fee motion was properly granted, but disagree that plaintiffs, Stephanie Blythe and Michelle Swanson, have standing to bring the motion only because they and their trial attorney agreed they would receive a portion of the attorney fee award. As parties to the underlying action, plaintiffs have standing to bring the motion regardless of any agreement between them and trial counsel that part of the fees belonged to them.

Defendant, County of Riverside, relies on *Flannery v. Prentice* (2001) 26 Cal.4th 572 to support its argument that attorney fees recoverable under Government Code section 12965 belong solely to the attorney and, because the trial attorney who earned the fees is not the moving party here, defendant owes plaintiffs no attorney fees. There are two problems with defendant's argument.

First, defendant's argument assumes trial counsel will get none of the attorney fee award, but the record belies this assumption. The trial attorney submitted a declaration in support of the motion, but he did not seek to intervene or make the motion on his own behalf. By supporting the motion, trial counsel implicitly agreed plaintiffs could make the motion. And to the extent trial counsel retains any interest in the fee award, that is a matter to be resolved between himself and plaintiffs, and is not before us.

Second, *Flannery* involved a dispute between an attorney and his client. It is within this context that the court stated "attorney fees awarded pursuant to [Government Code] section 12965 (exceeding fees already paid) belong, absent an enforceable

1

agreement to the contrary, to the attorneys who labored to earn them."  (*Flannery v.*

*Prentice, supra,* 26 Cal.4th at p. 590.)  Our case substantially differs; the dispute here is

between defendant and plaintiffs, not between plaintiffs and their trial counsel.

As such, when dealing with attorney fee-shifting provisions in matters promoting

the public interest, both the party and their counsel have standing to bring a motion for

attorney fees.  (See *Ruiz v. California State Automobile Assn. Inter-Insurance Bureau*

(2013) 222 Cal.App.4th 596, 606-610 [while expressly not addressing the question of a

party's standing, both counsel and the party appealed from a trial court order setting the

amount of fees].)[1]

This point was illustrated in *Lindelli v. Town of San Anselmo* (2006) 139

Cal.App.4th 1499 (*Lindelli*).  There, counsel for plaintiffs moved to intervene in an action

under Code of Civil Procedure section 1021.5 for purposes of seeking statutory attorney

fees; the only way counsel was going to get paid was by recovery of statutory fees, and

the plaintiffs refused to make the motion.  In reversing the trial court's denial of the

motion, the court initially indicated there was "no sound basis to distinguish between

---

[1] Traditionally, "one who is not a party to a proceeding may not make a motion therein."  (*Marshank v. Superior Court* (1960) 180 Cal.App.2d 602, 605.)  In *Marshank*, a former attorney for the wife sought from the husband by way of an order to show cause, payment of his attorney fees.  In finding that the attorney in his own right could not seek attorney fees, the court stated:  "[The attorney] . . . has no right to make a motion in his own behalf, as distinguished from a motion in behalf of his client for an award of attorney's fees in said action. . . . The attorney for such party has no separate equity in the counsel fees awarded to his client but instead his right thereto is derived from his client." (*Id.* at p. 607.)

Government Code section 12965 and Code of Civil Procedure section 1021.5 in the construction of the word 'party' . . . ." (*Lindelli, supra,* at p. 1509).[2]

Continuing, the *Lindelli* court stated: "Were we to interpret [Code of Civil Procedure] section 1021.5 as precluding intervention and an attorney's request for fees *where the client declines to move for a fee award*, we would diminish the certainty that attorneys who undertake public interest cases will receive reasonable compensation and dilute [Code of Civil Procedure] section 1021.5's effectiveness at encouraging counsel to undertake litigation enforcing important public policies. [Citation.] Were we to adopt respondents' position it would also provide a windfall to the wrongdoing defendant, at the expense of the attorneys who labored in the public interest." (*Lindelli, supra,* 139 Cal.App.4th at pp. 1512-1513, italics added.)

Further, *Lindelli* agreed that the terms "prevailing party" and "successful party" were synonymous, and that both terms authorized an award of attorney fees to a *litigant or its counsel*. (*Lindelli, supra,* 139 Cal.App.4th at p. 1509, citing *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 570 ["stating that 'prevailing party' and 'successful party' are 'synonymous' and characterizing *Flannery* as standing for the proposition that 'the word "party" as part of a prevailing party fee statute refers to litigant or litigant's attorney'"], fn. omitted.)

Unlike the plaintiffs in *Lindelli,* plaintiffs here did not decline to move for attorney fees. Instead, plaintiffs moved for attorney fees, and their trial attorney submitted a

---

[2] Government Code section 12965 refers to "prevailing party," while Code of Civil Procedure section 1021. 5 refers to "successful party."

3

declaration in support of their fee motion.  From defendant's standpoint, it owes attorney fees.  As between plaintiffs and their trial attorney, the fees may belong solely to the trial attorney or there may be some other arrangement not before us.  The defendant however, owes the fees.

Between plaintiff and defendant there is nothing about the fee-shifting concept which abrogates the traditional notion that a party has standing to seek attorney fees.

In sum, while I agree with the majority that plaintiffs have standing to bring the motion, their standing does not depend on some underlying fee arrangement with trial counsel wherein plaintiffs are to receive a portion of the fees.

KING                
J.